**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

WANDA LEA MORRIS,

                              Plaintiff,

      vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                             Defendant.

Case No. 4:13-cv-00035-SLG

## DECISION AND ORDER

On November 8, 2011, Wanda Lea Morris filed applications for Disability Insurance Benefits ("disability insurance") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act") respectively,[1] alleging disability beginning April 14, 2008 due to diabetes, heart problems, anxiety attacks, asthma, and arthritis.[2] Ms. Morris has exhausted her administrative remedies and filed a Complaint seeking relief from this Court.[3]

On February 10, 2017, Ms. Morris filed a document titled "In response to the 'Amended Social Security Scheduling Order' received."[4] The Commissioner and this

---

[1] The Court uses the term "disability benefits" to include both disability insurance and SSI.

[2] Administrative Record ("A.R.") 165, 177.

[3] Docket 1 (Compl.) at 2.

[4] Docket 34 (Morris's Opening Br.).

Court have treated this document as Ms. Morris's opening brief.[5] The Commissioner filed an Answer and a brief in opposition to Ms. Morris's opening brief.[6] No reply was filed. Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[7] For the reasons set forth below, Ms. Morris's request for relief at Docket 1 will be DENIED.

## I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[8] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[10] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts

---

[5] Docket 35 (Order Treating Docket 34 as Morris's Opening Brief). The Court also considered a letter dated September 20, 2015 from Ms. Inez Wright, a non-attorney representative from Alaska Legal Services Corporation, sent to the Appeals Council on Ms. Morris's behalf that outlined her exceptions to the ALJ's decision. A.R. 374–76.

[6] Docket 27 (Answer); Docket 36 (Def.'s Br.).

[7] 42 U.S.C. § 405(g).

[8] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[9] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[10] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975) (per curiam).

from the administrative law judge ("ALJ")'s conclusion.[11]   If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[12]   A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which she did not rely."[13]

## II.  DETERMINING DISABILITY

The Act provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[14]   In addition, SSI may be available to individuals who are age 65 or older, blind, or disabled, but who do not have insured status under the Act.[15]   Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[16]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job

---

[11] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[12] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[13] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[14] 42 U.S.C. § 423(a).

[15] 42 U.S.C. § 1381a.

[16] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[17]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[18]  A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[19]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[20]  The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[21]  The steps, and the ALJ's findings in this case, are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity." *The ALJ concluded that Ms. Morris has not engaged in substantial gainful activity since August 27, 2010, the potential onset date.[22]*

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work

---

[17] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[18] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[19] *Triechler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[20] *Triechler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[21] *Tackett*, 180 F.3d at 1101.

[22] A.R. 16.  Although Ms. Morris alleged disability beginning April 14, 2008, the ALJ found that res judicata applied to the period from April 14, 2008 to August 26, 2010.  *See* A.R. 15–16.

experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.  *The ALJ determined that Ms. Morris has the following severe impairments:  diabetes mellitus, hypertension, depression, and anxiety. She found that Ms. Morris's allegations of hip pain, knee pain, and problems with balance are not associated with a medically determinable impairment.  Additionally, the ALJ determined that although the record contained medical evidence of morbid obesity, osteoarthritis of the shoulders, history of coronary artery disease with stenting, asthma, chronic obstructive pulmonary disease ("COPD"), and spondylosis of the spine, none of these impairments were severe within the meaning of the applicable law.*[23]

**Step 3.**  Determine whether the impairment is the equivalent of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1 that are so severe as to preclude substantial gainful activity.  If the impairment is the equivalent of any of the listed impairments, and meets the duration requirement, the claimant is conclusively presumed to be disabled.  If not, the evaluation goes on to the fourth step.  *The ALJ determined that Ms. Morris does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.*[24]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.  Once determined, the RFC is used at both step four and step five.  An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from her impairments, including impairments that are not

---

[23] A.R. 16.

[24] A.R. 17.

severe.[25]  *The ALJ concluded that Ms. Morris has the RFC to perform light work except she is limited to occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; must avoid concentrated exposure to extreme cold, excessive vibration, and hazardous machinery; and superficial interaction with the general public.[26]*

**Step 4.**  Determine whether the claimant is capable of performing past relevant work.  At this step, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC.  If the claimant can still do her past relevant work, the claimant is deemed not to be disabled.  Otherwise, the evaluation process moves to the fifth and final step.  *The ALJ found that Ms. Morris is not able to perform any past relevant work.[27]*

**Step 5.**  Determine whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled.  *Based on the testimony of the vocational expert ("VE"), the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Ms. Morris can perform, including the positions of mail room sorter, routing clerk, and office helper.[28]*

---

[25] 20 C.F.R. § 404.1520(a)(4).

[26] A.R. 19.

[27] A.R. 23.

[28] A.R. 24.

Based on the foregoing, the ALJ concluded that Ms. Morris was not disabled from August 27, 2010 to July 18, 2015.[29]

## III. PROCEDURAL AND FACTUAL BACKGROUND

Ms. Morris was born in 1961; she is currently 56 years old. She last worked as a personal care assistant for Access Alaska in August of 2008.[30] In the past, she also worked as a retail cashier and as a driver and dispatcher for taxi companies.[31]

Ms. Morris filed a prior application for disability benefits on January 27, 2009, alleging disability beginning on April 14, 2008.[32] The ALJ in that case issued a decision on August 26, 2010 and concluded that Ms. Morris was not disabled from April 14, 2008 through the date of the decision.[33] Ms. Morris did not appeal that decision.

Ms. Morris initiated the current application for disability benefits on November 11, 2011.[34] After an initial denial, an administrative hearing was scheduled in Fairbanks, Alaska for April 8, 2013.[35] Ms. Morris and her representative failed to appear at the administrative hearing and the ALJ dismissed her subsequent request for hearing.[36] The Appeals Council denied Ms. Morris's request for review.[37] Ms. Morris appealed to this

---

[29] A.R. 14.

[30] A.R. 77, 408.

[31] A.R. 78–80, 408.

[32] A.R. 146.

[33] A.R. 15.

[34] A.R. 165.

[35] A.R. 194.

[36] A.R. 195.

[37] A.R. 41.

Court.[38]  On April 24, 2014, the Court granted the Commissioner's motion to remand the case to the agency for an administrative hearing.  However, the Court retained jurisdiction and held that Ms. Morris could reinstate her case in the event of an unfavorable decision at the administrative hearing.[39]

On remand to the agency, the ALJ held a video hearing on May 4, 2015.[40]  Ms. Morris was not represented by counsel; however, Ms. Inez Wright, a non-attorney from Alaska Legal Services Corporation, attended the hearing with Ms. Morris.[41]

The ALJ issued her decision on July 15, 2015.  The ALJ found that res judicata applied to preclude a disability finding from April 14, 2008 to August 26, 2010.[42]  However, due to "changed circumstances," the ALJ held that the *Chavez* presumption of continuing non-disability was not applicable to the period after August 26, 2010,[43]  because Ms. Morris's change in age from that of a younger individual (less than age 50) to that of an individual closely approaching advanced age (age 50 to 54) under the Medical-Vocational Rules constituted a changed circumstance.[44]  The ALJ then determined that Ms. Morris was not disabled from August 27, 2010 to July 18, 2015.[45]

---

[38] Docket 1 at 2.

[39] Docket 16 at 1.

[40] A.R. 13.

[41] A.R. 61.

[42] A.R. 15.

[43] A.R. 16 (citing *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988)).

[44] A.R. 23 (citing 20 C.F.R. §§ 404.1563, 416.963).

[45] A.R. 14.

On January 31, 2016, the Appeals Council declined to assume jurisdiction after remand.[46] As such, the case was reinstated in this Court on October 3, 2016.[47] Ms. Morris filed her opening brief on February 10, 2017; she is not represented by counsel in this appeal.[48]

Ms. Morris has been diagnosed with a number of medical impairments, including diabetes mellitus (type II), hypertension, heart problems (status-post stenting), dyslipidemia, chronic obstructive pulmonary disease ("COPD"), degenerative joint disease in her left hip, degenerative spondylosis and AC (acromioclavicular) joint osteoarthritis, mild basilar atelectasis, gait imbalance, exogenous obesity, and chronic depression.[49] The ALJ found that Ms. Morris's diabetes mellitus, hypertension, depression and anxiety were severe impairments.[50]

In 2007, Ms. Morris suffered a heart attack. She testified at the May 4, 2015 hearing that she has had a total of nine stents, all prior to 2008.[51]

*The Medical Record*

A summary of the medical records in the Court's file is as follows:

---

[46] A.R. 2.

[47] Docket 26 at 1.

[48] Docket 34.

[49] A.R. 462, 479, 533-34, 537-38, 551, 626. The record does not show that Ms. Morris has been diagnosed with anxiety.

[50] A.R. 16.

[51] A.R. 76.

On October 5, 2010, Ms. Morris saw Moazzem Khan, M.D., at the Interior Community Health Center ("ICHC").[52] She complained of a "deep, dull, acheing pin [sic.]" in her left hip, particularly associated with walking. Dr. Khan assessed Ms. Morris with degenerative joint disease. He noted her hypertension as controlled, and her gait imbalance, obesity and diabetes as unchanged.[53]

Ms. Morris's next visit to ICHC was on November 16, 2010. Ms. Morris's blood sugars were noted to be ranging from 145 to 382, but she denied any diabetic symptoms. Her obesity and diabetes were both noted to have deteriorated, but the degenerative joint disease was no longer noted.[54]

At Ms. Morris's next visit to ICHC on December 28, 2010, she reported blood sugars with most values under 160. Her hypertension was assessed as improved. The record for that date noted that Ms. Morris had had stents, but "as comment only" as the doctor did not treat her for heart problems at the visit.[55]

On January 5, 2011 and March 16, 2011, Dr. Khan again saw Ms. Morris for diabetes management. He discussed the need for complete cessation of cigarette smoking and noted she was at risk of uncontrolled diabetes. At each of these visits, Ms. Morris's medications were adjusted and her cardiovascular, respiratory, skin, neurological, and endocrine systems, as well as her mental status, were all assessed as

---

[52] A.R. 478.

[53] A.R. 479.

[54] A.R. 481–83.

[55] A.R. 487–88.

normal; with "no depression, anxiety, or agitation." Her hypertension was assessed as improved and her diabetes as unchanged.[56]

On April 26, 2011, Ms. Morris received a chest x-ray at Fairbanks Medical Hospital. The x-rays revealed degenerative spondylosis and AC (acromioclavicular) joint osteoarthritis, as well as "low lung volumes with mild basilar atelectasis."[57]

Ms. Morris returned to Dr. Khan on May 4, 2011 for ear pain and diabetes medication management, and again on June 1, 2011 for medication management.[58]

On September 13, 2011, Ms. Morris saw Dr. Khan seeking a refill of her pain medication. Dr. Khan assessed Ms. Morris for degenerative joint disease of the left hip and gait imbalance, but noted that Ms. Morris "claims that her current pain pill, Vicodin, can keep her [left] hip pain under reasonable control and wants her refill." He noted "marked deep tenderness" at Ms. Morris's left hip.[59]

At an office visit to ICHC on November 22, 2011, Ms. Morris's diabetes was assessed as "deteriorated." Ms. Morris said she could not control her diabetes. She added she could "not get much activity due to chronic pain."[60]

On December 27, 2011, Kimberly Douglas, M.D., another doctor at ICHC, noted that Ms. Morris's diabetes had improved, but added that Ms. Morris reported she was depressed about her financial status. The doctor assessed Ms. Morris with chronic

---

[56] A.R. 489–492.

[57] A.R. 462.

[58] A.R. 494–95, 497.

[59] A.R. 499–500.

[60] A.R. 503–04.

depression, but added that she "decline[d] counseling services" and a "$4 antidepressant."[61]

Ms. Morris returned to the health center on January 26, 2012 seeking a refill for her pain medication. She admitted dietary noncompliance and complained of episodes of nocturia and polyuria. She denied any problems with her mood and was no longer assessed as chronically depressed.[62]

On March 28, 2012, Dr. Khan saw Ms. Morris for diabetes management. Ms. Morris denied any problem with her mood except she reported "anxiety for her financial hardship."[63]

At a visit to Dr. Khan on April 26, 2012, Ms. Morris reported that she could not afford to fill all of her medication prescriptions. She maintained that her pain medication, Vicodin, was also keeping her blood pressure under control.[64]

Ms. Morris saw Dr. Khan again on May 8, 2012. Her blood sugar levels were lower; the doctor noted they were "much better than before." No mental health issues were noted.[65]

---

[61] A.R. 507.

[62] A.R. 511.

[63] A.R. 515.

[64] A.R. 517–18.

[65] A.R. 520–23.

On June 26, 2012, Ms. Morris returned to Dr. Khan. She again denied any problem with her mood. As with nearly every visit, she was encouraged to quit smoking, lose weight, watch her diet, and get regular exercise.[66]

On August 3, 2012, Ms. Morris reported blood sugar levels mostly below 150. She was noted as limping from left hip pain.[67]

On September 4, 2012, Ms. Morris's diabetes continued to be better controlled, with blood sugar levels reported to be mostly under 140. She again stated that Vicodin also kept her blood pressure under control and wanted a refill.[68]

On October 1, 2012, Ms. Morris returned to Dr. Khan and her diabetes remained improved. Degenerative joint disease of the left hip was noted, but assessed as improved.[69]

Ms. Morris's next office visit was on January 10, 2013. She reported she was compliant with her medications, diet and activities. She was observed limping from left hip pain.[70]

At the next office visit on March 25, 2013, Ms. Morris again reported left hip pain and sought a Vicodin refill.[71]

---

[66] A.R. 526.

[67] A.R. 528–29.

[68] A.R. 532–33.

[69] A.R. 538.

[70] A.R. 541–42.

[71] A.R. 545.

The first assessment of Chronic Obstructive Pulmonary Disease (mild) ("COPD") was at Ms. Morris's visit on May 7, 2013. She was prescribed Albuterol Sulfate.[72]

At visits on June 11, 2013, July 16, 2013, and August 20, 2013, Ms. Morris reported being compliant with her medications, diet and activities. Her hypertension was reported as under control.[73]

On September 10, 2013, Dr. Khan noted Ms. Morris complained of "mild burning feet" and sought an increase in her pain medication. The doctor added a new assessment of polyneuropathy associated with diabetes and prescribed medication for that condition.[74]

At an October 22, 2013 office visit, Ms. Morris reported that the Vicodin kept her left hip pain under reasonable control and sought a refill. Ms. Morris was asked whether she had felt down, depressed or hopeless at any point in the previous two weeks and she responded "not at all."[75]

On December 23, 2013, Ms. Morris again reported no signs of depression. COPD was not assessed at that visit.[76]

On February 25, 2014, Ms. Morris had another depression screening. On that day, she indicated that she had felt "down, depressed or hopeless" "[n]early every day" for the past two weeks. In the same screening, she also answered that "nearly every day" of the

---

[72] A.R. 551.

[73] A.R. 553, 558, 562.

[74] A.R. 568–70.

[75] A.R. 572–73.

[76] A.R. 576–80.

past two weeks she had "little interest or pleasure in doing things." However, the doctor did not prescribe medication for depression or recommend counseling. Ms. Morris's blood sugar level was very high at 422.[77]

Less than one month later, at a March 19, 2014 office visit, Ms. Morris had another depression screening. On that date, she responded "not at all" when asked whether she had felt down, depressed or hopeless over the past two weeks.[78]

On April 15, 2014, Dr. Khan noted that Ms. Morris's diabetes was significantly out of control and she had episodes of nocturia and polyuria, but denied any skin lesions. Her hemoglobin test was elevated at 14.0. At this same visit, Ms. Morris reported no symptoms of depression. She was assessed for COPD. Her left hip pain was assessed as improved.[79]

At a doctor's visit on July 1, 2014, Ms. Morris was asked whether she was "currently having any pain which . . . affects your activity level?" She responded, "No." At the same visit in an anxiety screening, she was asked whether she was "feeling nervous, anxious, or on edge" or "[u]nable to stop or control worrying" during the preceding two weeks. She responded, "Not at all" to both questions. Ms. Morris's diabetes was improved, with most of her blood sugar levels reported below 120. Her weight was lower than in prior visits, at 258 pounds. No assessment is listed for degenerative joint disease, although limping from left hip pain is noted. There is no assessment for COPD.[80]

---

[77] A.R. 582–83.

[78] A.R. 587.

[79] A.R. 592–94.

[80] A.R. 598–602.

On August 13, 2014, Ms. Morris's diabetes was reported as well controlled. She was not having pain which affected her activity level, but the record notes limping from left hip pain. She declined a depression and anxiety screening.[81]

On October 10, 2014, Ms. Morris reported no anxiety or depression symptoms over the prior two weeks and her diabetes had improved. She was again encouraged to exercise regularly and lose weight.[82]

On January 2, 2015, Ms. Morris's chief complaint was diabetes and medication refills. She was again screened for depression and reported no depressive symptoms at that visit.[83]

On April 6, 2015, in a record provided to the ALJ after the May 4, 2015 hearing, Ms. Morris reported feeling down, depressed or hopeless "[n]early every day" of the preceding two weeks. Dr. Khan diagnosed Ms. Morris with chronic depression as a result of her responses to screening questions. On a self-administered patient health questionnaire for depression, she had a significantly elevated score with a severity rating of "[s]evere" and a functional impairment of "[e]xtremely [d]ifficult." Ms. Morris did not identify any factor causing her depression except "her ongoing financial stress." She was advised to make an appointment with a behavior health psychologist. The record also noted that Ms. Morris "states she absolutely DOES NOT want to see the Psychologist at all."[84]

---

[81] A.R. 603–04.

[82] A.R. 611–14.

[83] A.R. 616–17.

[84] A.R. 622–23. *See also* A.R. 65.

*Hearing Testimony and Third Party Reports*

At the May 2015 hearing, Ms. Morris testified that she has severe social anxiety, "really bad balance," knee pain, back pain and "constant" hip pain. She stated that "[p]eople scare me. It takes me quite a while to get to know somebody to where I can trust them to be there." She also testified that she had heart "flutters and pains that go across," but that she had not received any treatment for heart problems after stents were put in. She reported that she could lift "ten to 15 pounds at the most" and that she could not "do it repetitively." Ms. Morris testified that her brother "calls me or texts me every day to remind me to take my medicine" and that she has reminder notes on her wall "to remind me to check my blood in the mornings and to take my insulin before I go to bed." She reported problems with sleeping and bathing due to pain. However, Ms. Morris also testified that she could drive, wash dishes, clean her apartment, take out the garbage, watch television, shop for groceries with assistance, and cook. She can read and write in English, add, subtract, and make change. At the hearing she reported that she had never seen a counselor for anxiety or depression, nor had she ever used anti-depressive or anti-anxiety medications.[85]

On February 2, 2012, Wandal Winn, M.D., a state agency consultant, reviewed Ms. Morris's medical records and provided a mental residual functional capacity assessment. Dr. Winn reported that Ms. Morris's "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness" was "[m]oderately limited." As explanation, he wrote that "[Ms. Morris] should be limited to superficial

---

[85] A.R. 67–68, 69–70, 74–76, 81, 83.

general public contact because of her personality disorder" and that she "was fired for stealing money" at her cashier-checker job. He also noted that "she did not appear to have problems with customers."[86] The ALJ found Dr. Winn's opinion was "incomplete" because he did not include any opinion regarding specific limitations; the ALJ accorded Dr. Winn's opinion "partial weight only to the extent it is consistent with the residual functional capacity."[87]

## IV. DISCUSSION

Ms. Morris is self-represented. She did not file a formal opening brief, but submitted a list asserting that she: (1) "suffer[s] from social anxieties, and balance issues," (2) is "not able to lift over 10 pounds," (3) is "in constant pain," and (4) "cannot go shopping or to the doctor without someone [she] know[s] and trust[s] with [her]." [88]

This Court liberally construes Ms. Morris's brief and affords her "the benefit of any doubt."[89] The Court addresses each of Ms. Morris's arguments in turn.

A.  Social Anxieties

Ms. Morris maintains that she "suffer[s] from debilitating social anxieties." She testified to the ALJ that she has "severe social anxieties." The ALJ found that Ms. Morris's

---

[86] A.R. 170–75.

[87] A.R. 22.

[88] Docket 34. The Commissioner reads Ms. Morris's brief to raise the following issues: (1) "Whether the ALJ provided adequate reasons for declining to rely on Plaintiff's own statements about the severity and limiting effects of her symptoms"; and (2) "Whether substantial evidence supports the ALJ's residual functional capacity assessment." Docket 36 at 3.

[89] *Bretz v. Kelman,* 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). Because Ms. Morris is self-represented in this appeal, the Court rejects the Commissioner's argument that Ms. Morris has waived any claim because she "failed to provide any analysis of the issues, and presented no law, evidence or citation to the record in support of her position." Docket 36 at 5.

allegations regarding the severity of her anxiety impairments were "not . . . wholly credible."[90]

An ALJ's credibility assessment has two steps.[91] First, the ALJ determines whether the claimant has presented objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged."[92] In this first step, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."[93] On this point, the ALJ held that Ms. Morris's depression and anxiety were medically determinable severe impairments.[94]

In the second step, the ALJ evaluates the intensity and persistence of a claimant's symptoms by considering "all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect her."[95] If a claimant produces objective medical evidence of an underlying impairment, the ALJ may reject testimony regarding the claimant's subjective pain or the intensity of symptoms, but must provide "specific, clear and

---

[90] A.R. 22.

[91] *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1102 (9th Cir. 2014).

[92] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

[93] *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996).

[94] A.R. 16.

[95] 20 C.F.R. § 416.929(a).

convincing reasons for doing so."[96]  The ALJ is required to "specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines [that] testimony"; general findings are insufficient.[97]

Here, Ms. Morris testified she has "severe social anxieties".  At the hearing on May 4, 2015, she stated "People scare me.  It takes me quite a while to get to know somebody to where I can trust them to be there."  She also testified that she needs assistance grocery shopping "[b]ecause [she] ha[s] society anxiety and panic attack[s]."[98]  However, the ALJ found that due to "the lack of alleged depression and anxiety related symptoms, the lack of persistent symptoms found within the claimant's treatment records, the lack of clinical examination findings, and the minimal nature of treatment," Ms. Morris's allegations regarding the severity of her depression and anxiety were not wholly credible. The ALJ noted specifically that the medical records "show only two occasions during the period at issue where the claimant endorsed depression or anxiety related symptoms" and "in fact, show that she consistently denied such symptoms."  Further, the ALJ noted that Ms. Morris also testified that she had never been to a counselor for social anxiety or depression and she did not use anti-depressive or anti-anxiety medications.  The ALJ also noted after reviewing the extensive treatment record, that "[Ms. Morris]'s other examination records do not reveal findings consistent with depression or anxiety."[99]

---

[96] *Smolen,* 80 F.3d at 1281.

[97] *Treichler,* 775 F.3d at 1102 (quoting *Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001); *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)).

[98] A.R. 69, 74.

[99] A.R. 22.

The ALJ's findings are consistent with the Court's review of the record. As the ALJ found, Ms. Morris denied depression and anxiety symptoms on numerous doctor visits.[100] Ms. Morris did screen positive for depression on two occasions. She first screened positive on February 25, 2014, but the doctor did not prescribe medication for depression or recommend counseling at that visit.[101] On April 6, 2015, Ms. Morris again reported screened positive for depression but expressly declined psychological services and no medication for mental health was prescribed.[102]

Based on the foregoing, the Court finds that the ALJ provided specific, clear and convincing reasons supported by substantial evidence in the record for her determination that Ms. Morris's allegations regarding the severity of her depression and anxiety impairments were not wholly credible.

B. Balance Issues

Ms. Morris asserts that she also suffers from balance issues.[103] At the May 4, 2015 hearing, Ms. Morris testified, "I have really bad balance, I have to walk with a cane mainly to keep my balance."[104] The ALJ found that Ms. Morris's balance problem was not an underlying physical impairment "that could reasonably be expected to produce the

---

[100] Ms. Morris denied depression and anxiety symptoms on January 5, 2011, March 16, 2011, January 26, 2012, June 26, 2012, October 22, 2013, December 23, 2013, March 19, 2014, April 15, 2014, July 1, 2014, October 10, 2014, and January 2, 2015. A.R. 489–492, 511, 526, 573, 576–80, 587, 592–94, 598–602, 611–14, 616–17.

[101] A.R. 582–83.

[102] A.R. 622. In addition, as noted above, on December 27, 2011, Ms. Morris reported she was depressed about her financial status. However, she declined counselling and medication at that time.

[103] Docket 34.

[104] A.R. 69.

claimant's pain or other symptoms" because the "medical evidence of record fails to establish the existence of an impairment that would reasonably result in . . . difficulty with balance."[105]

At a doctor's visit on October 5, 2010, Ms. Morris was diagnosed with gait imbalance.[106] She reported that she felt "unsteady in changing from sitting to standing" and at a subsequent visit on November 16, 2010.[107] However, the record from a visit on December 28, 2010 no longer assesses her with a gait imbalance.[108] Indeed, in January of 2011, Ms. Morris's gait and station are noted as "normal."[109] When Ms. Morris is assessed at her visit on September 13, 2011, her gait imbalance is noted as "improved."[110] After 2011, the records do not contain any reference or assessment of gait imbalance.[111]

The ALJ's findings are consistent with the Court's review of the record. An "impairment" must "ha[ve] lasted or can be expected to last for a continuous period of not less than 12 months."[112] Ms. Morris was assessed with gait imbalance for considerably less than 12 months. The Court finds that the ALJ sufficiently considered the medical

---

[105] A.R. 20.

[106] A.R. 479.

[107] A.R. 479, 482.

[108] A.R. 488.

[109] A.R. 490.

[110] A.R. 500.

[111] After 2011, the record does have numerous references to Ms. Morris limping due to hip pain. A.R. 529, 542, 546, 550, 554, 559, 563, 569, 573, 577, 583, 588, 593, 599, 604, and 612.

[112] 20 C.F.R. §§ 404.1505, 416.905.

record and substantial evidence in the record supports the ALJ's determination that Ms. Morris did not provide objective medical evidence of an impairment that could reasonably be expected to result in balance issues.

C.    Lifting Limitation

Ms. Morris asserts in her letter brief to the Court that she is "not able to lift over 10 pounds."[113]  She testified to the ALJ that she could lift "ten to 15 pounds at the most" and that she "wouldn't be able to do it repetitively."[114]  Liberally construed, the Court interprets this to mean that Ms. Morris is asserting that the ALJ erred by not including a 10 to 15 pound maximum lifting restriction in the RFC.[115]

The ALJ found that Ms. Morris had the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with certain additional limitations."[116]  The ALJ explained that in reaching her conclusion, she considered Ms. Morris's "subjective allegations; the objective medical evidence; any evidence related to daily activities; the duration, frequency, and intensity of the alleged symptoms; the dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions."[117]

---

[113] Docket 34.

[114] A.R. 81.

[115] Docket 34, Docket 35.

[116] A.R. 19. *See supra* at 4.

[117] A.R. 22–23.

A court should affirm an ALJ's determination of a claimant's RFC "if the ALJ applied the proper legal standard and [her] decision is supported by substantial evidence."[118] It is "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."[119] To assess Ms. Morris's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"[120]

The Code of Federal Regulations contains the following definition of "light work":

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.[121]

The ALJ's analysis of Ms. Morris's alleged impairments noted that Ms. Morris's x-rays in April of 2011 revealed osteoarthritis of the AC (acromioclavicular) joints and spondylosis of the spine.[122] But the ALJ also observed that "neither the interpreting physician nor any other physician gave an opinion as to the severity" of the two conditions.

---

[118] *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

[119] *Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001) (citing *Magallanes v. Bowen,* 881 F.2d 747, 756-57 (9th Cir. 1989)).

[120] SSR 96-08p, *available at* 1996 WL 374184 at *5.

[121] 20 C.F.R. §§ 404.1567(b) and 416.967(b).

[122] A.R. 462.

Additionally, the ALJ noted that the record does not show "ongoing complaints" of shoulder pain or abnormalities of the shoulders. None of Ms. Morris's other treatment records shows abnormalities of the spine.[123]

The ALJ stated she also considered evidence regarding Ms. Morris's daily activities. Ms. Morris testified that with frequent rest breaks she is able to drive, wash dishes, watch television, clean her apartment, take out the garbage, cook, and shop for groceries.[124] She testified that she needs help shopping for groceries because of "social anxiety" and "panic attack[s]," not because of a lifting limitation.[125] She testified to the ALJ that she "can't exercise . . . [b]ecause my body won't let me do it because of the pains and I can't walk around the block without having to sit down,"[126] but at nearly all of her visits to the ICHC, she "[c]laims to be compliant with her med(ication)s, diet and activities," and her doctors regularly urged her to exercise without any special restrictions noted.[127]

Substantial evidence in the record as a whole supports the ALJ's determination that Ms. Morris does not have a severe impairment that would preclude her from lifting "20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[128]

D.    Pain Assessment

---

[123] A.R. 17.

[124] A.R. 67–68, 74.

[125] A.R. 74.

[126] A.R. 72.

[127] A.R. 478, 487, 489, 491, 494, 497, 499, 511, 514, 520, 524, 528, 532, 536, 541, 545, 549, 553, 558, 562, 568, 573, 577, 583, 588, 593, 599, 604, 612, 617.

[128] 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Ms. Morris alleges that she is "in constant pain."[129]  The ALJ found that the "medical evidence of record fails to establish the existence of an impairment that would reasonably result in hip pain [or] knee pain."[130]

At the May 2015 hearing, Ms. Morris testified regarding her hip pain: "well, I'm in constant pain but sometimes it can be really severe, sometimes not."  She reported that "[i]f there's any kneeling or if I have to get down on my knees to do anything it's like kneeling on pincushions through my knees."[131]  She testified that she could not do the exercise that her doctor prescribed because of pain.[132]  However, in pain assessment screenings given at her visits in July and August of 2014, Ms. Morris denied having pain which affected her activity level.[133]  The medical records also show that she repeatedly informed her health care providers that her pain medication, Vicodin, kept her hip pain under reasonable control.[134]

Based on the foregoing, the Court finds that the ALJ properly evaluated Ms. Morris's allegations of pain and provided specific, clear and convincing reasons for finding Ms. Morris's allegations as to the severity of her pain not entirely credible.

## V.  ORDER

---

[129] Docket 34.

[130] A.R. 20.

[131] A.R. 69.

[132] A.R. 72.

[133] A.R. 598, 603.

[134] A.R. 499, 518, 529, 533, 536, 545, 562, 568, 573, 577, 588, 612, 617.

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are free from legal error and supported by substantial evidence. Accordingly, IT IS ORDERED that Ms. Morris's request for relief at Docket 34 is DENIED and the Commissioner's final decision is AFFIRMED.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 11th day of December, 2017 at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE